902 F.2d 737
 23 Collier Bankr.Cas.2d 479, Bankr. L. Rep. P 73,371
In re John H. LENOX; Sina A. Lenox, d/b/a Lenox Farms, Debtors.
Joseph A. MEYER; Jo Ann Meyer; James B. Meyer; Germaine
A. Meyer, Appellants,
v.
John H. LENOX; Sina A. Lenox, d/b/a Lenox Farms, Appellees.
 No. 88-15302.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 15, 1990.
Decided April 30, 1990.
 
 Daniel S. Corder, Smith & Corder, Reno, Nev., for appellants.
 Geoffrey L. Giles, Reno, Nev., for appellees.
 Appeal from the Ninth Circuit Bankruptcy Appellate Panel.
 Before WIGGINS and NOONAN, Circuit Judges, and TASHIMA*, District Judge.
 NOONAN, Circuit Judge:
 
 
 1
 Joseph A. Meyer, Jo Ann Meyer, James B. Meyer, and Germaine A. Meyer (the Meyers) appeal from an order of the Bankruptcy Appellate Panel (BAP). We affirm in part, reverse in part and remand.
 
 FACTS
 
 2
 John and Sina Lenox (the Lenoxes) bought a farm from the Meyers in 1974, giving a 15-year promissory note for $193,000, secured by a first deed of trust on the property. By the note's terms they were to pay $12,866.66 (principal and interest) annually, with the final payment on February 1, 1989. The Lenoxes defaulted in 1982, 1983 and 1984. The Meyers began foreclosure. On August 14, 1984 the Lenoxes filed under Chapter 11.
 
 
 3
 On September 5, 1984 the Meyers filed for relief from the automatic stay so that they could foreclose. On November 15, 1984 the parties entered into a stipulation. The Meyers agreed to postpone seeking relief from the automatic stay. The Lenoxes agreed to make monthly payments of $250 per month from December 1, 1984 to May 1, 1985, escalating to $500 per month from June 1, 1985 to November 1, 1985, and finally to $800 per month from December 1, 1985 to November 1, 1986, and to make the loan current (principal and interest, fees and costs) by December 1, 1986.
 
 
 4
 The parties further agreed that if the Lenoxes defaulted on the agreed payments, the automatic stay would be terminated and the Meyers would be free to foreclose. They also agreed that the terms of the stipulation would bind the Lenoxes in any plan of reorganization. An order of the bankruptcy court on November 29, 1984 approved the stipulation.
 
 
 5
 On August 13, 1985 the Lenoxes filed a plan of reorganization that did not incorporate the stipulation and did alter the monthly payments. At this point the loan had been paid down to $96,000. The Lenoxes were farming approximately 225 acres for barley and wheat. Sina Lenox had a clerical job paying $14,000. John Lenox was hoping to get a non-farm job. The Lenoxes now proposed to pay the original contract amounts of annual interest and principal.
 
 
 6
 The plan proposed by the Lenoxes altered the stipulation in three ways. First, the plan did not incorporate the terms of the stipulation as agreed between the parties. Second, the Lenoxes did not need to make the final payment on December 1, 1986 to bring the loan current. Third, they were able to stretch out the loan beyond the original fifteen years provided under the promissory note. Counsel for the Lenoxes said of this proposal: "The reason it is set up on a yearly basis is because they are farmers. They get crops once a year. That is when they can pay it. It is a clear case of stretching out secured creditors' loan, and we are not taking one dime out of their pockets. We agreed to the contract rate. We just need more time." Without hearing evidence on November 21, 1986 the bankruptcy court approved the plan over the objection of the Meyers. They appealed.
 
 
 7
 The BAP determined that the Bankruptcy Court for the District of Nevada erred in confirming the plan without hearing evidence that the plan complied with the requirements of 11 U.S.C. Sec. 1129. A remand was necessary. But the BAP also upheld the bankruptcy court's rejection of the stipulation. The BAP stated: "We find that the plan was not proposed for the purpose of renouncing the agreement, but rather, the plan did not comply with the agreement because compliance was not economically feasible." The BAP added that the stipulation was not binding on the bankruptcy court because, "[i]f this were not the case, and a bankruptcy court cannot confirm a plan unless it complied with the stipulation, it could lead to absurd results. A debtor could essentially propose its entire plan via a stipulation with one consenting creditor and court approval. The debtor could then bind all creditors to the terms of the plan without getting consent from the creditors and without even submitting a disclosure statement."
 
 
 8
 The Meyers appealed to this court.
 
 ANALYSIS
 
 9
 The BAP was, of course, correct that the plan had to be remanded for the bankruptcy court to take evidence as to whether it was feasible. See Acequia, Inc. v. Clinton (In re Acequia, Inc.), 787 F.2d 1352, 1358 (9th Cir.1986); see also Bankr.R. 3020(b)(2). We affirm the order of remand. We publish this opinion only to address the BAP's treatment of the stipulation. In general, stipulations are not to be lightly set aside. See Lindsey v. Department of Labor (In re Harris Management Co.), 791 F.2d 1412, 1415-16 (9th Cir.1986) (per Kennedy, J.) (equities did not justify bankruptcy court's revocation of its approval of stipulation in Chapter 11 case). But at the same time bankruptcy courts, as courts of equity, have the power to reconsider, modify or vacate their previous orders so long as no intervening rights have become vested in reliance on the orders. Chinichian v. Campolongo (In re Chinichian), 784 F.2d 1440, 1443 (9th Cir.1986); Taylor v. Lake (In re CADA Invs., Inc.), 664 F.2d 1158, 1161 (9th Cir.1981); see 11 U.S.C. Sec. 105(a). This power has been formalized in Bankruptcy Rule 9024, which makes Federal Rule of Civil Procedure (FRCP) 60 applicable to bankruptcy cases. In re CADA Invs., 664 F.2d at 1161.
 
 
 10
 Although FRCP 60(b) provides that a court may relieve a party from a final order upon motion, it does not prohibit a bankruptcy judge from reviewing, sua sponte, a previous order. See 11 U.S.C. Sec. 105(a); see also In re Chinichian, 784 F.2d at 1442-43. And although FRCP 60(b) refers to relief from final orders, it does not restrict the bankruptcy court's power to reconsider any of its previous orders when equity so requires. See id.; In re CADA Invs., 664 F.2d at 1161; 11 U.S.C. Sec. 105(a). The bankruptcy court can even set aside a stipulation entirely if the interests of justice so require and if the parties can be restored to the positions they occupied before they entered the stipulation. A & A Sign Co. v. Maughan, 419 F.2d 1152, 1155 (9th Cir.1969).
 
 
 11
 Where a family farm is concerned there may be such special circumstances that the bankruptcy court should exercise its equitable powers to prevent the farm's forfeiture. Metropolitan Life Ins. Co. v. Olsen (In re Olsen), 861 F.2d 188, 189 (8th Cir.1988) (bankruptcy court had power to modify farm family's reorganization plan where family's income was reduced by unforeseen change in government's farm program; farm families should not be forced to forfeit their homes where modest changes fair to creditors can be made in reorganization plan). But the bankruptcy court must find such special circumstances to exist and it must take the maximum steps reasonably practical to put the other party to the stipulation in a position close to what the stipulation gave it. In the present case the bankruptcy court made no findings and engaged in no effort to keep the Meyers close to the position they had achieved by the stipulation.
 
 
 12
 By the time this case reaches the bankruptcy court on remand almost five years will have lapsed since the plan was approved. No doubt changes have occurred. No doubt time has shown whether the plan was feasible. On remand the bankruptcy court is directed to enforce the stipulation unless it finds special circumstances now justify a course of action necessary to save the family farm. If it so finds, the bankruptcy court is to adopt such measures as are practicable that will give the Meyers as nearly as possible the interest and principal which, under the stipulation, they would have had by December 1, 1986. The bankruptcy court also is to shorten the repayment period under the plan to the extent practicable so that the Meyers can be repaid as nearly as possible in fifteen years rather than in twenty-three years.
 
 
 13
 Affirmed in part, reversed in part and remanded.
 
 
 
 *
 Honorable A. Wallace Tashima, United States District Judge for the Central District of California, sitting by designation