**In re INTERNATIONAL FIBERCOM, INC., an Arizona corporation, et al., Debtors.**

**Zurich American Insurance Company, Movant,**

**v.**

**International Fibercom, Inc., an Arizona corporation, et al., Respondents.**

**Nos. 2–02–02143–PHX–RJH to 2–02–02163–PHX–SSC.**

United States Bankruptcy Court, D. Arizona.

July 26, 2004.

**863**

Steve J. Brown, Steve Brown & Associates, LLC, Phoenix, AZ, Attorneys for Trustee Maureen Gaughan.

Mark C. Hudson, Schian Walker, P.L.C., Phoenix, AZ, Attorneys for Zurich American Insurance Company.

AMENDED OPINION RE: ZURICH'S MOTION FOR RELEASE OF CASH COLLATERAL AND CHAPTER 7 TRUSTEE'S MOTION TO CLARIFY ORDER OF MARCH 14, 2002

RANDOLPH J. HAINES, Bankruptcy Judge.

Zurich American Insurance Company ("Zurich") asserts that this Court's Order of March 14, 2002 (the "March 14 Order" or the "Assumption Order"), granted it a security interest in a $750,000 bank account to secure the obligation of Debtor International Fibercom, Inc. ("Debtor") to pay Zurich up to a $100,000 deductible on each workers compensation claim paid by Zurich, regardless of whether the claim arose prepetition or postpetition. The Debtor, through its Chapter 7 Trustee Maureen Gaughan ("Trustee"), has objected on a number of grounds, arguing among other things that the bank account was never created so there is no security interest in any collateral, and that the March 14 Order was improper or based on mistakes of facts or law if in fact it required Debtor to grant such a security interest to secure prepetition obligations.

The Court denies Zurich's motion for summary judgment by interpreting the ambiguous language of the March 14 Order not to have the effect of securing prepetition obligations. The Court will grant the Trustee's motion to the extent that this Order clarifies the intent and effect of the March 14 Order, but denies as moot the Trustee's motion to the extent it seeks a modification of the March 14 Order.

**Background Facts**

When the Debtor filed this bankruptcy case as a Chapter 11[1] on February 13, 2002, it had a workers compensation insurance policy with Zurich that was about to expire on February 28. On March 8, 2002, the Debtor moved to assume this policy pursuant to Bankruptcy Code § 365. The Court granted that motion by its March 14 Order. Although the workers compensation policy would have expired on February 28, the parties had agreed to its extension up until the time the Court entered

---

[1]. Unless otherwise indicated, all chapter, section and rule references are to the United States Bankruptcy Code, 11 U.S.C. §§ 101– 1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

the March 14 Order. Among other things, the March 14 Order extended the workers compensation policy through July 1, 2002.

The Debtor needed to maintain workers compensation insurance policies in force so that it could continue in operation until it sold its business as a operating business. As contemplated at the time it moved to assume the workers compensation insurance policies, the Debtor filed a motion to sell all of its assets on April 4, 2002, and that motion was granted on an extremely expedited basis on April 12, 2002. The Debtor ceased operating its business after entry of the order approving the sale of all of the Debtor's assets, and therefore had no need of continuing workers compensation insurance coverage.

The workers compensation policy provided by Zurich had a very high deductible, requiring the Debtor to reimburse Zurich for the first $100,000 of any workers compensation claim that was insured and paid by Zurich. The Debtor's motion to assume the workers compensation policy stated, with respect to this obligation to pay deductibles, that the Debtors "are current [on] their reimbursement obligations." [2]

The Debtor's motion to assume the policy sought authority to pay Zurich a premium of $294,523 for the extension of the policy from February 28 to July 1. It also sought approval of the Debtor's agreement to provide Zurich "$750,000 in cash to secure the [Debtors'] obligation to reimburse deductible amounts (the 'Additional Collateral')." [3] The Debtor's motion had a footnote to this sentence stating as follows:

The Additional Collateral is in addition to the Initial Collateral. The Initial Collateral is intended to secure "terminal runoff costs" which are the costs associated with the [Debtors'] deductible obligations due to Zurich after February 28, 2002. After the terminal runoff costs are paid, then the balance (if any) will be returned to the [Debtors].[4]

When the Court granted the Debtor's motion, the March 14 Order required the Debtor to "immediately establish a segregated account" at Bank One "entitled 'Workers Compensation Account' and deposit into such account the sum of $750,000." [5] It also provided that Zurich "is hereby granted a first priority lien on the funds on deposit in the WC Account, for the purpose of securing Zurich's entitlement to reimbursement for disbursements made to workers compensation claimants up to the deductible amount provided for under the WC Insurance Policy." [6] Debtor never in fact established the account after the March 14 Order. Zurich argues, however, that the Court should now order the Debtor to establish such account out of the proceeds of the sale of its assets, and then permit Zurich to exercise its rights as to such collateral.

### The Parties' Positions

There appears to be no dispute between the parties that the deductible amounts that have accrued under the initial and the extended terms of the workers compensation policy exceed the total of the $750,000 that was to be provided as additional collateral, plus the $610,000 Zurich already held; indeed, Zurich also seeks an administrative priority claim of $622,933 for un-

---

2. Debtors' Verified Motion for Entry of an Order: (I) Approving Assumption of Workers Compensation Insurance Policy; and (II) Granting Other Related Relief ("Debtor's Motion to Assume"), at 4, ll. 19–20.

3. Debtor's Motion to Assume, at 6, ll. 16–18.

4. *Ibid.*, ll. 25–28.

5. March 14 Order, at 2, ll. 10–12.

6. *Ibid.*, ll. 14–17.

paid deductibles after application of the $1.36 million it claims as collateral.

Debtor points out, however, that Zurich's own data indicates that of the nearly 200 claims for which Zurich seeks to be reimbursed the deductible amount, only approximately $59,000 of those claims arose postpetition. Debtor maintains, and Zurich does not really dispute, that the determination of whether a deductible reimbursement obligation is a general prepetition unsecured claim or is a postpetition administrative expense priority claim hinges on when the worker was injured, not on when the insurance company paid the claim or made the demand for reimbursement of the deductible.[7]

Moreover, Debtor maintains that as of March 8 when the assumption motion was filed and as of March 14 when the Order was entered granting it, the workers compensation policy was not an executory contract. Because assumption of an executory contract requires the debtor to cure all existing defaults, it effectively grants administrative priority status to all prepetition debts. If there was no executory contract, however, there is no legal basis for those prepetition obligations to become either administrative priority claims or secured claims, because the Ninth Circuit has held that it is improper to "cross collateralize" a prepetition unsecured claim with postpetition assets.[8]

Debtor therefore argues that the assumption order was improper to the extent that it granted a postpetition security interest to secure such prepetition deductible reimbursement obligations, and asks the Court to vacate or amend the March 14 Order under Rule 9024 to the extent that it does so. Debtor also maintains, however, that there is in fact no security for these obligations because the bank account intended to secure them was never created. Zurich responds that it is far too late to amend the March 14 Order, especially because it relied to its detriment on that Order in extending the workers compensation policy until the Debtor could close the sale of its business.

## Analysis

▇▇▇ Debtor is correct that the workers compensation policy was not an executory contract. It appears superficially to have been one, because there were undeniably obligations due and owing by both parties: Zurich had the continuing obligation to pay any workers compensation claims that arose during the policy term, and the Debtor had the continuing obligation to reimburse Zurich for the deductible amount of any claim Zurich paid. But while the Bankruptcy Code does not define executory contract, the Ninth Circuit has adopted the Countryman test under which a contract is executory only if one party's failure to perform its obligation would excuse the other party's performance.[9]

---

7. *In re Christian Life Ctr.*, 821 F.2d 1370, 1374 (9th Cir.1987); *In re Eli Witt Co.*, 213 B.R. 396, 399–400 (Bankr.M.D.Fla.1997); *In re Oread*, 269 B.R. 871, 878–79 (Bankr.D.Kan. 2001); *West Va. Hosp. Ins. Corp. v. Broaddus Hosp. Ass'n (In re Broaddus Hosp. Ass'n)*, 159 B.R. 763, 768–71 (Bankr.N.D.W.Va.1993); *In re Yanks*, 49 B.R. 56, 59 (Bankr.S.D.Fla. 1985). *Cf. Hassanally v. Republic Bank (In re Hassanally)*, 208 B.R. 46 (9th Cir. BAP 1997)(claim arising from discharge of pollution arises when the pollution is discharged, not when the costs are incurred for cleanup).

8. *In re Sun Runner Marine, Inc.*, 945 F.2d 1089 (9th Cir.1991); *In re Defender Drug Stores*, 145 B.R. 312, 316 (9th Cir. BAP 1992)(citing *In re Saybrook Mfg. Co.*, 963 F.2d 1490 (11th Cir.1992)).

9. *In re Pac. Express, Inc.*, 780 F.2d 1482, 1487 (9th Cir.1986)(a contract is executory when the obligations "of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the oth-

Debtor further asserts, and Zurich does not dispute, that the Debtor's failure to reimburse Zurich for the deductible amounts would not excuse Zurich from paying further workers compensation claims that were incurred, because the policy itself contained a provision required by Arizona law and similar state statutes: "Your default or the bankruptcy or insolvency of you or your estate will not relieve us of our duties under this insurance after an injury occurs." [10]

Clearly, therefore, if it had been brought to the Court's attention that the contract was not executory and that the effect of granting the Debtor's motion would be to secure the Debtor's prepetition obligation to reimburse Zurich for the deductibles incurred on claims arising prepetition, both the Creditors Committee and the United States Trustee would have objected and this Court would not have granted the motion. Moreover, the motion violated this Court's General Order 82 in a couple of respects. As noted, the motion was brought within the first 30 days of this bankruptcy case and it was heard and granted on an extremely expedited basis with minimal notice to the parties. Such a motion is a "first day motion" governed by General Order 82. [11] Among other things,

---

er.")(citing *In re Select–A–Seat Corp.*, 625 F.2d 290, 292 (9th Cir.1980) and Vern Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn. L.Rev. 439, 460 (1973)).

10. *See, e.g.*, Arizona Revised Statutes § 23–963(4) (1995 & Supp.2003); *In re Texscan Corp.*, 976 F.2d 1269, 1273 (9th Cir.1992).

11. General Order 82 provides:

**Advance Courtesy Copy to U.S. Trustee.** Except as the Court may otherwise direct before or after the fact, and in addition to the service required by the Federal Rules of Bankruptcy Procedure, Local Rules and case law, for any motion for which an accelerated hearing is sought within the first 30 days after the filing of a chapter 11 petition (*e.g.*, a "first day motion"), the debtor or other movant shall provide the Office of the U.S. Trustee at least 24 hours' advance notice of the nature of the case, the nature of the relief sought, and the proposed timing of the hearing, and shall provide the Office of the U.S. Trustee private courtesy copies of drafts of all such motions as soon as they are in substantially final form. Such advance notice and courtesy copies are required even if this means they must be provided before the petition is filed. The U.S. Trustee shall keep such advance notice and courtesy copies confidential until the case is filed.

**Conspicuousness Requirements for First Day, Cash Collateral and Financing Motions.** In any such motion, any motion for use of cash collateral pursuant to Code § 363, and any motion for postpetition financing pursuant to Code § 364, the first or second paragraph of the motion shall conspicuously state whether any of the following kinds of relief is sought and, if so, identify the pages of the motion and the attached exhibits that support such relief:

1. Granting a prepetition creditor a lien or security interest in postpetition assets in which the creditor would not otherwise have a security interest by virtue of its prepetition security agreement and applicable law, other than replacement liens in the same kind of collateral as the creditor had prepetition, in order to obtain the use of that creditor's cash collateral (sometimes known as "cross-collateralization");

2. Findings, conclusions, holdings or orders as to the amount of a secured debt or the validity, perfection and scope of the security interests securing such debt, that purportedly affect the rights of the estate or anyone other than the debtor in possession and the secured creditor;

3. Release, waiver or abandonment of claims, setoff rights, surcharge rights, avoidance actions and subordination actions against a secured creditor, or findings or stipulations that no such rights exist, that purportedly affect the rights of the estate or anyone other than the debtor in possession and the secured creditor;

4. Granting of liens or security interests against rights and actions arising under Code §§ 544, 545, 547, 548 or 549;

5. The use of funds derived from postpetition financing to pay all or part of a prepetition secured debt, or a provision that deems prepetition secured debt to be

that General Order requires that the first or second paragraph of such a motion conspicuously state whether it seeks to grant "a prepetition creditor a lien or security interest in postpetition assets." This motion did not do so, yet that is exactly the effect for which Zurich now contends. General Order 82 also provides that such relief will not be granted on an "accelerated basis" absent extraordinary circumstances, unless an official Creditors Committee has had sufficient time to organize, engage professionals and investigate the requested relief. Here, the motion was granted on an accelerated basis and before the committee's professionals had sufficient time to review it.[12] It may well be that this violation of General Order 82 is sufficient grounds to vacate or modify the March 14 Order notwithstanding any det-

rimental reliance Zurich may have placed on it.[13]

Zurich's principal argument against modification of the Order is that it is too late to do so, primarily because Zurich detrimentally relied on it in extending its workers compensation policy. It is difficult to see, however, how Zurich's reliance on the provisions that violated General Order 82 could have been detrimental reliance. Zurich has received an almost $300,000 premium for the short extension of the policy, and the Assumption Order properly secured all of the Debtor's postpetition reimbursement obligations. Zurich profited from the extension and undertook virtually no risk. The provisions of the Assumption Order that did not violate General Order 82 by granting postpetition security for prepetition debt placed

---

postpetition secured debt, other than as permitted by Code § 552(b);

6.  Granting surcharge or "carve-out" rights to a debtor's professionals without providing equivalent treatment to professionals engaged by an authorized committee, or any restrictions on the surcharge or carve-out rights granted to such professionals other than the requirement for Court approval of the fees or expenses (*e.g.*, a restriction against investigating or pursuing causes of action against the secured creditor);

7.  Payment of prepetition wages, salary or other compensation to an employee in an amount in excess of the Code's priority amount, payment of any severance or vacation pay earned prepetition, or payment of any officer's, director's, insider's or equity holder's prepetition wages, salaries, commissions, benefits or consulting fees; and

8.  Priming any secured creditor under Code § 364(d) without that creditor's consent.

**Limited Scope of Interim Relief.** Absent extraordinary circumstances, the Court will ordinarily not grant such a motion that includes any of the provisions listed above on an interim or accelerated basis, and such provisions may be excluded even from "final" orders issued after 15 days' notice, unless an official creditors' committee has had suffi-

cient time to be appointed, organize, engage professional(s), and analyze and investigate the requested relief with the advice of such professional(s).

**Reconsideration of Interim and First Day Orders.** On any motion for reconsideration filed within 30 days of receipt of notice of the entry of the order granting such a motion on shortened notice, the burden of proof with respect to the appropriateness of the relief shall remain on the debtor or other movant notwithstanding the entry of such order, except to the extent of funds necessarily and irrevocably expended in reliance on such order.

General Order 82 became effective April 4, 2001.

12.  The Committee was appointed on February 21 and its employment of counsel was approved on February 27, just nine days before Debtor moved to assume the Zurich policies. The Committee filed no response to the motion.

13.  *Cf. In re Circle K Corp.*, 279 F.3d 669 (9th Cir.2002)(where application to employ professionals did not unambiguously state that it was for a fixed fee pursuant to Code § 330, court may review it for reasonableness and reduce fees under § 327 even though professionals relied on it being a fixed fee).

Zurich in a far better position than it would have been in had the Order never been entered. In the absence of such detrimental reliance, the Court may modify a prior order pursuant to Rule 9024 because no intervening rights have become vested in reliance on the order.[14]

While this Court believes that it has authority on these facts to modify the March 14 Order, there are two alternative less extreme remedies available.

■ First, as the Debtor notes the bank account intended to secure Zurich was never created. Zurich is therefore here asking this Court to enforce the Order by compelling the Debtor to create the bank account now, and then permit Zurich to exercise its right against it. But as a court of equity, this Court has the power to decline to enforce a prior order that was entered in error. And Zurich does not have "clean hands" in asking this Court for that equitable relief, for at least two reasons. Zurich failed to ensure that the Debtor's assumption motion complied with the conspicuousness requirement of General Order 82. Zurich slept on its rights by failing to ensure that the bank account was promptly created and funded. Perhaps if it had done so, it would have quickly brought to the parties' and the Court's attention that the Order required the Debtor to set aside funds to secure prepetition obligations.

■ Second, the Court may interpret the Order so that it does not do violence to the Code's priority scheme, and General Order 82. While the Assumption Order unambiguously requires the Debtor to secure some obligations to Zurich, it is ambiguous whether the obligations being secured were prepetition or postpetition obligations. The Order merely provides that Zurich "is hereby granted a first priority lien on the funds on deposit in the WC Account, for the purpose of securing Zurich's entitlement to reimbursement for disbursements made to workers compensation claimants up to the deductible amount provided for under the WC Insurance Policy."[15] This does not make clear whether the security is only for claims arising during the extended, postpetition period of the policy, or whether it also secures claims that arose prepetition.

It makes sense to resolve this ambiguity by construing the grant of the security interest only to secure claims and deductible reimbursement obligations that arose during the extended term of the policy. This is because the Debtor's motion recited that the Debtors "are current [on] their reimbursement obligations."[16] Consequently it appears that the parties believed, and the Court would have been justified in concluding, that there were no prepetition obligations to be secured. Although Zurich may have understood to the contrary due to its familiarity with the long-tail nature of such insurance,[17] Zurich did nothing to make this known to the Debtor, the Creditors Committee, the U.S. Trustee or the Court. To the contrary, it

---

**14.** *In re Lenox,* 902 F.2d 737, 739–40 (9th Cir.1990); *In re Chinichian,* 784 F.2d 1440, 1443 (9th Cir.1986); *In re CADA Inv., Inc.,* 664 F.2d 1158, 1161 (9th Cir.1981).

**15.** March 14 Order, at 2, ll. 14–17.

**16.** Debtor's Motion to Assume, at 4, ll. 19–20.

**17.** That is, there may be a long time between the time when a worker is injured on the job and the time when the insurance company pays the claim. Although the Debtor may have been current in its obligation to reimburse Zurich for all claims it had paid, there still might be many workers who had been injured who had not yet made claims, or who had made claims but they had not yet been granted or paid.

acquiesced in the filing of a motion that clearly implied, if not stated, that there were no outstanding prepetition obligations of the Debtor owing to Zurich. The security it sought would therefore logically extend only to the new risks Zurich was assuming by agreeing to the extension of the policy.

Moreover, such interpretation renders the Debtor's motion and the March 14 Order consistent with General Order 82. Because both the Debtor and Zurich are presumed to have knowledge of the requirements of General Order 82, and yet did not make conspicuous an effort to obtain postpetition security for prepetition obligations, it is fair to conclude that was not their agreement and intent.

For the foregoing reasons, the Court interprets the March 14 Order to secure only those deductible reimbursement obligations that pertain to claims that accrued postpetition, i.e., with respect to workers whose injury occurred on or after February 13, 2002.

The Court therefore denies Zurich's motion to the extent that it seeks either security or administrative expense priority for deductibles pertaining to injuries occurring prior to February 28, 2002, and grants it with respect to injuries occurring on or after that date.