**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re: INTERNATIONAL FIBERCOM,
INC., Debtor.

ZURICH AMERICAN INSURANCE
COMPANY,
                            *Appellant,*

             v.

INTERNATIONAL FIBERCOM, INC., an
Arizona corporation; MAUREEN
GAUGHAN,
                            *Appellees.*

No. 05-16358

D.C. No.
CV-04-02100-DGC

OPINION

Appeal from the United States District Court
for the District of Arizona
David G. Campbell, District Judge, Presiding

Argued and Submitted
July 11, 2007—San Francisco, California

Filed September 12, 2007

Before: Procter Hug, Jr., Pamela Ann Rymer, and
Raymond C. Fisher, Circuit Judges.

Opinion by Judge Hug

12337

**COUNSEL**

Karen Lee Turner, Eckert Seamans Cherin & Mellott, LLC, Philadelphia, Pennsylvania, for the appellant.

Steven J. Brown, Steve Brown & Associates, LLC, Phoenix, Arizona, for the appellees.

**OPINION**

HUG, Circuit Judge:

This case presents the question of whether a bankruptcy court may limit a prior order where the prior order granted relief not permitted by the Bankruptcy Code. Here, the bankruptcy court issued an order approving the assumption of a workers' compensation insurance policy under § 365 of the Bankruptcy Code, 11 U.S.C. § 365. The bankruptcy court later concluded that the assumption order violated § 365 because it allowed the assumption of a non-executory contract. Relying on Federal Rule of Civil Procedure 60(b)(6), applied to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 9024, the bankruptcy court interpreted the assumption order to comply with § 365. We hold that the bankruptcy court properly relied upon Federal Rule of Civil

Procedure 60(b)(6) in limiting its prior order to ensure that the order complied with the Bankruptcy Code. Accordingly, we affirm.

I.

International FiberCom, Inc. ("IFCI" or "Debtor") filed for bankruptcy under Chapter 11 of the Bankruptcy Code[1] on February 13, 2002. At that time, IFCI had a workers' compensation insurance policy with Zurich American Insurance Co. ("Zurich"), but the policy was set to expire on February 28, 2002. Weeks earlier, Zurich expressed its intent not to renew the policy upon expiration. Applicable non-bankruptcy laws required IFCI to maintain workers' compensation insurance in order to continue operating. Consequently, IFCI needed to replace Zurich's policy in order to continue operating until it could sell its business as a going concern. Although IFCI attempted to find another insurer prior to the petition date, it was unable to do so because other insurance companies had no interest in doing business with an ailing telecommunications company whose financial weakness was known throughout the industry. As a result, IFCI requested that Zurich renew the policy and eventually negotiated an extension of the policy until IFCI could sell its business.

Under IFCI's original workers' compensation insurance policy with Zurich, IFCI paid an annual premium of $927,952, which had already been paid before the petition date. The policy also required IFCI to pay a $100,000 deductible on any workers' compensation claim paid by Zurich. In addition, IFCI set aside $500,000 in "initial collateral" to secure its reimbursement obligations in case of default.

As required by Arizona law[2] and similar state statutes, the original workers' compensation insurance policy contained

---

[1] 11 U.S.C. §§ 101-1330.

[2] IFCI was incorporated in Arizona.

the following provision: "Your [IFCI's] default or the bankruptcy or insolvency of you or your estate will not relieve us [Zurich] of our duties under this insurance after an injury occurs."

IFCI and Zurich eventually agreed to assume the policy pursuant to § 365 of the Bankruptcy Code, effectively extending the policy from February 28 to July 1, 2002. In consideration, IFCI agreed to pay an additional $294,523 premium for the 9-week extension. IFCI also agreed to provide an additional $750,000 in "additional collateral" to secure its obligation to reimburse Zurich for deductibles arising under the assumed policy. Zurich would have a first priority lien on the additional collateral. If the initial collateral and additional collateral were insufficient to provide full reimbursement of the deductible amounts due to Zurich, Zurich would be entitled to an administrative claim under 11 U.S.C. § 507(a)(1). IFCI and Zurich also agreed to a brief extension of the original policy until March 14 so that the bankruptcy court could approve IFCI's request to assume the policy.

## II.

IFCI filed a motion for entry of an order approving assumption of the policy on March 8, 2002.[3] In its assumption motion, IFCI requested the bankruptcy court's approval of the assumption of its workers' compensation insurance policy, as required by § 365(a). At the same time, IFCI also filed a motion for an emergency hearing on the assumption motion. Notice of the assumption motion and motion for emergency hearing was served on counsel for the Official Committee of Unsecured Creditors ("Creditors Committee"), which the U.S. Trustee appointed approximately two weeks before the assumption motion was filed. Notice was also served on the U.S. Trustee and three creditors. The bankruptcy court ini-

---

[3]At that time, IFCI was the debtor-in-possession and was authorized to continue operating its business pursuant to 11 U.S.C. §§ 1107-08.

tially scheduled the emergency hearing for March 13, 2002, but, because no objections to the assumption motion were filed, the bankruptcy court did not hold a hearing.

On March 14, 2002, the bankruptcy court issued an order granting IFCI's request for approval of the assumption of the workers' compensation insurance policy. The bankruptcy court's assumption order approved the terms and conditions presented in IFCI's assumption motion and extended the policy through July 1, 2002.[4] The assumption order also required IFCI to "immediately establish a segregated account . . . and deposit into such account the sum of $750,000." The bankruptcy court further provided Zurich a first priority lien on the funds in the additional collateral account for the purpose of securing Zurich's entitlement to reimbursement for disbursements made to workers' compensation claimants up to the deductible amount provided for under the policy.

IFCI never in fact established the additional collateral account after the bankruptcy court issued the assumption order. Not only did IFCI fail to set aside the additional collateral, IFCI also failed to pay deductibles due to Zurich under the policy. In response, Zurich filed motions for allowance of administrative expense and relief from the automatic stay in October 2002. Discovery and briefing on the motions continued until the bankruptcy court granted IFCI's motion to convert its bankruptcy petition from Chapter 11 to Chapter 7 on August 25, 2003. At that time, the bankruptcy court appointed Maureen Gaughan as Trustee for IFCI's estate. Shortly thereafter, the bankruptcy court vacated the scheduling order and the motions were never decided.

Zurich later filed a motion for summary judgment on March 24, 2004, in which it requested release of the additional collateral in order to cover IFCI's unpaid reimburse-

---

[4]IFCI sold its assets in April 2002, rendering the remaining portion of the extension period null.

ment obligations. By the time Zurich filed its summary judgment motion, deductibles accrued under the initial and extended terms of the policy amounted to nearly $2 million, exceeding the total of both the initial collateral of $500,000 and the $750,000 in additional collateral. In its summary judgment motion, Zurich requested that the bankruptcy court order IFCI to establish the additional collateral account out of the proceeds of the sale of its assets (i.e., the assets of the estate) and then permit Zurich to exercise its rights to the funds in the account. Importantly, Zurich did not reveal in its summary judgment motion that virtually all of the claims for which it sought reimbursement arose from injuries that occurred prior to the petition date.

Opposing Zurich's motion for summary judgment, the Trustee filed a motion to clarify or partially vacate the bankruptcy court's assumption order, pursuant to Federal Rule of Civil Procedure 60(b)(6) and Federal Rule of Bankruptcy Procedure 9024, on May 6, 2004. According to the Trustee, Zurich was not entitled to have any of the deductibles resulting from injuries that arose prior to the petition date reimbursed as administrative expenses because the policy was not an executory contract and, therefore, could not be assumed pursuant to § 365. The only legally permissible effect of the assumption order, according to the Trustee, was to approve an extension of the policy and authorize payment of post-petition claims as secured administrative expenses.

According to Zurich's own data, only about 15 of the nearly 200 individual workers' compensation claims for which Zurich seeks reimbursement arose from injuries that occurred after the petition date. Those 15 claims add up to only approximately $59,000 of the nearly $2 million sought by Zurich. If the Trustee were ordered to pay Zurich $750,000 out of IFCI's estate, nearly half of the estate's total assets would be removed, thus adversely affecting other creditors. As a result, the Trustee requested that the bankruptcy court either "clarify" ambiguous language in the assumption order

to limit the assumption order to post-petition claims or partially vacate the assumption order.

The bankruptcy court issued an order on July 26, 2004, in which it granted the Trustee's motion to clarify the assumption order. *See Zurich Am. Ins. Co. v. Int'l FiberCom, Inc. (In re Int'l FiberCom, Inc.)*, 311 B.R. 862 (Bankr. D. Ariz. 2004). In that order, the bankruptcy court concluded that the policy was not an executory contract and, consequently, could not be assumed under § 365. *Id.* at 866. The bankruptcy court further found that IFCI's assumption motion failed to comply with the notice and conspicuousness requirements of the bankruptcy court's General Order 82. *Id.* at 866-67. For those reasons, the bankruptcy court interpreted its prior assumption order "so that it does not do violence to the [Bankruptcy] Code's priority scheme, and General Order 82." *Id.* at 868. In doing so, the bankruptcy court pointed to ambiguous language in the assumption order regarding which claims were covered by the extended policy.

> The Order merely provides that Zurich "is hereby granted a first priority lien on the funds on deposit in the [additional collateral] Account, for the purpose of securing Zurich's entitlement to reimbursement for disbursements made to workers compensation claimants up to the deductible amount provided for under the WC Insurance Policy." This does not make clear whether the security is only for claims arising during the extended, postpetition period of the policy, or whether it also secures claims that arose prepetition.

*Id.* Because IFCI stated in its assumption motion that it was current on its reimbursement obligations to Zurich, the bankruptcy court found that "the parties believed, and the Court would have been justified in concluding, that there were no prepetition obligations to be secured." *Id.* Therefore, the bankruptcy court interpreted the assumption order "to secure

only those deductible reimbursement obligations that pertain to claims that accrued postpetition, i.e., with respect to workers whose injury occurred on or after February 13, 2002." *Id.* at 869. As a result of the bankruptcy court's order, only the approximately $59,000 in claims stemming from post-petition injuries would be secured administrative expense claims.[5] The rest of the claims would be unsecured claims.[6]

After the bankruptcy court issued its order clarifying the assumption order, Zurich moved pursuant to Federal Rule of Civil Procedure 59(a) to alter or amend the order, for rehearing, and for a full evidentiary hearing. The bankruptcy court denied that motion. Zurich then appealed the bankruptcy court's clarification of the assumption order and denial of an evidentiary hearing to the district court, which affirmed the bankruptcy court's decision on June 16, 2005. Zurich timely appealed the district court's affirmance to this court.

## III.

We review a bankruptcy court's grant of a motion for relief from an order under Federal Rule of Civil Procedure 60(b) for an abuse of discretion. *See Casey v. Albertson's Inc.*, 362 F.3d 1254, 1257 (9th Cir. 2004); *Hammer v. Drago (In re Hammer)*, 940 F.2d 524, 525 (9th Cir. 1991). A court's decision whether to hold an evidentiary hearing is also reviewed for an abuse of discretion. *See Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1139 (9th Cir. 2004); *Defenders of Wildlife v. Bernal*, 204 F.3d 920, 928-29 (9th Cir. 2000). In an appeal from

---

[5]*See* 11 U.S.C. § 503(b)(1)(A)(i) (defining "administrative expenses" as "the actual, necessary costs and expenses of preserving the estate including . . . wages, salaries, and commissions for services rendered *after* the commencement of the case") (emphasis added). The Trustee concedes that Zurich's post-petition claims deserve administrative expense status.

[6]*See Christian Life Ctr. Litig. Def. Comm. v. Silva (In re Christian Life Ctr.)*, 821 F.2d 1370, 1373-74 (9th Cir. 1987) ("Claims that arise from a creditor's pre-petition services to the debtor are not entitled to administrative expense treatment.").

a bankruptcy court, we review the bankruptcy court's decision independently, without deference to the district court. *See Suncrest Healthcare Ctr. v. Omega Healthcare Investors, Inc. (In re Raintree Healthcare Corp.)*, 431 F.3d 685, 687 (9th Cir. 2005). The bankruptcy court's conclusions of law, including its interpretation of the Bankruptcy Code, are reviewed de novo and its factual findings are reviewed for clear error. *Salazar v. McDonald (In re Salazar)*, 430 F.3d 992, 994 (9th Cir. 2005).

## IV.

At issue in this appeal is whether a bankruptcy court may grant relief from a prior order under Federal Rule of Civil Procedure 60(b)(6) due to legal error and procedural violations. Rule 60(b), incorporated to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 9024, provides in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . . (4) the judgment is void; . . . or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. . . . This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, . . . or to set aside a judgment for fraud upon the court.

Fed R. Civ. P. 60(b). Rule 60(b) compliments the discretionary power that bankruptcy courts have as courts of equity "to reconsider, modify or vacate their previous orders so long as no intervening rights have become vested in reliance on the

orders." *Meyer v. Lenox (In re Lenox)*, 902 F.2d 737, 740 (9th Cir. 1990) (citing *Chinichian v. Campolongo (In re Chinichian)*, 784 F.2d 1440, 1443 (9th Cir. 1986); *Taylor v. Lake (In re CADA Invs., Inc.)*, 664 F.2d 1158, 1161 (9th Cir. 1981)). That equitable power is established by § 105(a) of the Bankruptcy Code, which provides that a bankruptcy court may, "sua sponte, tak[e] any action or mak[e] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105(a); *see also In re Superior Toy & Mfg. Co.*, 78 F.3d 1169, 1175 (7th Cir. 1996) ("In addition to the court's discretionary power, trustees may seek relief pursuant to Federal Rule of Civil Procedure 60(b).").

**[1]** In limiting its prior order, the bankruptcy court pointed to legal error as the basis for its clarification of the assumption order. The catch-all provision of Rule 60(b)(6) provides that a bankruptcy court may relieve a party from an order for "any other reason justifying relief from the operation of the judgment." Fed. R. Civ. P. 60(b)(6). And "errors of law are cognizable under Rule 60(b)."[7] *Liberty Mut. Ins. Co. v. EEOC*, 691 F.2d 438, 441 (9th Cir. 1982).

---

[7]Zurich contends that legal error is cognizable under Rule 60(b)(1) (mistake), not Rule 60(b)(6), and is therefore subject to the one-year time limitation. Yet the case Zurich cites, *Liberty Mutual Insurance Co. v. EEOC*, 691 F.2d 438 (9th Cir. 1982), does not actually support that proposition. In that case, this court stated: "The law in this circuit is that errors of law are cognizable under Rule 60(b)." *Id.* at 441. The court then went on to analyze a district court's reconsideration of its award of costs under Rule 60(b)(1). *Id.* The court's reliance on subsection 1 instead of subsection 6 in that case was appropriate because the district court mistakenly issued an order that conflicted with a decision of this court in the same case. That is, in that case the district court made a *mistake* under the law of the case doctrine. *See id.* at 440. But here, the assumption motion involved far more than a mere mistake. Rather, the relief granted by the assumption order constituted a statutory violation. Furthermore, unlike *Liberty Mutual*, this case also involves procedural violations that affected the outcome of the proceeding and gave rise to the legal error.

**[2]** We have stated in the past that Rule 60(b)(6) should be "liberally applied," *Hammer*, 940 F.2d at 525, "to accomplish justice." *Yanow v. Weyerhaeuser S.S. Co.*, 274 F.2d 274, 284 (9th Cir. 1959) (quoting *Klapprott v. United States*, 335 U.S. 601, 615 (1949)). At the same time, "[j]udgments are not often set aside under Rule 60(b)(6)." *Latshaw v. Trainer Wortham & Co.*, 452 F.3d 1097, 1103 (9th Cir. 2006). Rather, Rule 60(b)(6) should be " 'used sparingly as an equitable remedy to prevent manifest injustice' and 'is to be utilized only where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment.' " *United States v. Washington*, 394 F.3d 1152, 1157 (9th Cir. 2005) (quoting *United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993)). Accordingly, a party who moves for such relief "must demonstrate both injury and circumstances beyond his control that prevented him from proceeding with . . . the action in a proper fashion." *Community Dental Servs. v. Tani*, 282 F.3d 1164, 1168 (9th Cir. 2002).

**[3]** The bankruptcy court correctly found that extraordinary circumstances justified reconsidering the assumption order because the order erroneously granted assumption of a non-assumable contract, thereby violating § 365 of the Bankruptcy Code. Under § 365, a debtor may assume the obligations of any executory contract, subject to the bankruptcy court's approval. 11 U.S.C. § 365(a). A contract is executory, and therefore assumable under § 365, only if one party's failure to perform its obligation would excuse the other party's performance. *Commercial Union Ins. Co. v. Texscan Corp. (In re Texscan Corp.)*, 976 F.2d 1269, 1272 (9th Cir. 1992); *Pac. Express, Inc. v. Teknekron Infoswitch Corp. (In re Pac. Express, Inc.)*, 780 F.2d 1482, 1487 (9th Cir. 1986) (quoting Vern Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn. L. Rev. 439, 460 (1973)). In *Texscan*, we held that a workers' compensation insurance policy was not executory under § 365 because, pursuant to Arizona law, the insurance company was required to continue processing claims despite

the debtor's bankruptcy petition. *Texscan*, 976 F.2d at 1273 (quoting Ariz. Rev. Stat. § 23-963). Even if the debtor in *Texscan* failed to pay its premiums or otherwise breached the contract, the insurance company would be obligated to continue covering workers' compensation claims that arose prior to the policy's expiration. *Id.*

**[4]** The workers' compensation insurance policy between Zurich and IFCI contained a provision based on the same Arizona statute involved in *Texscan*. Specifically, the policy contained the following qualification: "Your default or the bankruptcy or insolvency of you or your estate will not relieve us of our duties under this insurance after an injury occurs." That provision was mandated by Arizona Revised Statute § 23-963(4).[8] Consequently, if IFCI failed to pay its premiums or failed to reimburse Zurich for deductibles, Zurich would be contractually and legally obligated to continue performing under the contract by covering workers' compensation claims, despite IFCI's breach. Therefore, the workers' compensation insurance policy in this case is clearly not executory under *Texscan*. The bankruptcy court thus correctly concluded that its assumption order granted relief inconsistent with § 365.

**[5]** Zurich's arguments to the contrary are unpersuasive. First, Zurich attempts to distinguish *Texscan* on the ground

---

[8]Section 23-963 provides, in relevant part:

> Every policy of insurance covering the liability of the employer for workers' compensation . . . shall cover the entire liability of the employer to his employees covered by the policy or contract, and be deemed to contain the following provisions:
>
> . . .
>
> 4. That the insolvency or bankruptcy of the employer and his discharge therein shall not relieve the insurance carrier or workers' compensation pool from payment of compensation for injuries or death sustained by an employee during the life of the policy or contract.

Ariz. Rev. Stat. § 23-963.

that the case involved a policy that had already expired prior to the petition date, whereas the policy in this case was still in effect at the time of the bankruptcy petition but would have expired if not for the assumption order. Zurich fails to explain why that distinction is meaningful. A policy's pending expiration does not transform it from non-executory to executory, and Zurich provides no reason to believe that the expiration date is relevant to whether a contract is assumable under § 365. Second, Zurich attempts to distinguish this case from *Texscan* by arguing that "renewal of the policy required both Debtor and Zurich to undertake additional material obligations, none of which had yet been performed and which were therefore executory." Zurich does not state which material obligations in particular made the renewal of the policy executory. Presumably, such obligations would include IFCI's payment of the additional premium, establishment of the additional collateral account, and reimbursement of deductibles. The facts of this case demonstrate, however, that those material obligations did not render the policy executory. After all, IFCI failed to establish the additional collateral account, but Zurich does not contend that IFCI's failure would have excused its performance. Additionally, Zurich continued to pay workers' compensation claims and advance IFCI's deductibles, as it was contractually and legally required to do, even after IFCI stopped reimbursing Zurich. Thus, the policy was not executory despite those additional obligations. Finally, Zurich argues that the Arizona statute does not render the policy non-executory because the statute allows an insurer to refuse to cover claims from injuries arising after the insured files for bankruptcy. According to Zurich, filing for bankruptcy would excuse the insurer's performance going forward, such that claims arising from injuries that occur after the petition date would not be covered by the policy. The text of the statute does not support Zurich's argument. In fact, the statute states that "bankruptcy of the employer . . . shall not relieve the insurance carrier . . . from payment of compensation for

injuries or death sustained by an employee *during the life of the policy*." Ariz. Rev. Stat. § 23-963(4) (emphasis added). As such, the language of the statute expressly prohibits such post-petition termination of coverage. Similarly, nothing in our opinion in *Texscan* supports such a reading of the statute. Even the text of the policy in this case does not support Zurich's interpretation. Therefore, we reject Zurich's attempt to characterize its workers' compensation insurance policy with IFCI as executory. Because the workers' compensation insurance policy was non-executory and, therefore, non-assumable under § 365, there was no legal basis on which Zurich could obtain a lien on IFCI's post-petition assets to secure pre-petition claims arising under the policy.

**[6]** In addition to requesting relief not permitted by the Bankruptcy Code, IFCI's assumption motion also violated the bankruptcy court's notice and conspicuousness requirements. General Order 82 requires that any "first day motion" must "conspicuously state" in the first or second paragraph whether the bankruptcy court's approval would result in: "1. Granting a prepetition creditor a lien or security interest in postpetition assets in which the creditor would not otherwise have a security interest by virtue of its prepetition security agreement and applicable law . . . (sometimes known as 'cross-collateralization')." General Order 82 also provides that such relief will not be granted unless an official creditors committee has had sufficient time to organize, engage professionals, and investigate the requested relief. A "first day motion" is defined as "any motion for which an accelerated hearing is sought within the first 30 days after the filing of a Chapter 11 petition." Zurich does not dispute that IFCI's assumption motion was filed within the first 30 days and was accompanied by a motion for an emergency hearing. Consequently, the district court correctly found that General Order 82 applied on its face to the assumption motion.

Nevertheless, Zurich argues that General Order 82 does not apply to any assumption motion whatsoever. General Order

82 applies only to a lien on post-petition assets that "the creditor would not otherwise have . . . by virtue of its prepetition security agreement *and* applicable law." (Emphasis added.) According to Zurich, its lien on the additional collateral was created by virtue of applicable law when the contract was assumed under § 365. Zurich's argument is misguided for two reasons. First, General Order 82 uses "and" as a connector, not "or." For General Order 82 not to apply, the original, prepetition workers' compensation insurance policy would also have to grant Zurich a lien on IFCI's post-petition assets. It doesn't. Second, even if § 365 constitutes the "applicable law" referred to in General Order 82, § 365 does not grant Zurich a lien on the additional collateral because the workers' compensation insurance policy was non-executory and non-assumable. Therefore, contrary to Zurich's assertions, General Order 82 applied to the assumption motion.

[7] The assumption motion failed to comply with General Order 82 because the motion was granted before the Creditors Committee's professionals had sufficient time to review it.[9] More importantly, at no point did the motion state that the requested relief would result in cross-collateralization. The motion did state that Zurich would have a first priority lien on the additional collateral, but it also stated that IFCI was current on its reimbursement obligations to Zurich. Consequently, the motion facially appears to request a lien on the additional collateral only for workers' compensation claims arising post-petition. Both the bankruptcy court and the district court found that statement misled the bankruptcy court into believing that IFCI had satisfied all of its pre-petition obligations to Zurich and, as a result, that no pre-petition claims would be elevated to post-petition secured claims.[10] In fact, the bankruptcy court went so far as to state that

---

[9]The Creditors Committee was appointed on February 21, 2002, and its employment of counsel was approved on February 27, just nine days before IFCI moved to assume the policy.

[10]Zurich responds by pointing out that IFCI's reimbursement obligations were paid quarterly, and that IFCI had paid all of its obligations for that particular quarter. Again, Zurich misses the point. The assumption motion failed to state that the effect of the bankruptcy court's approval would be to create a cross-collateralization, and Zurich does not dispute that fact.

"[c]learly, . . . if it had been brought to the Court's attention that the contract was not executory and that the effect of granting the Debtor's motion would be to secure the Debtor's prepetition obligation to reimburse Zurich for the deductibles incurred on claims arising prepetition, . . . this Court would not have granted the motion." *Int'l FiberCom*, 311 B.R. at 866. Thus, not only did the assumption motion fail to comply with General Order 82, but that failure affected the outcome of the proceeding. As a result, the bankruptcy court properly clarified the assumption order under Rule 60(b)(6) so that it would comply with General Order 82.

Zurich argues that the Trustee, as IFCI's successor in interest, is not legally permitted to challenge the actions of IFCI as the debtor-in-possession.[11] In general, "[a]s the successor in interest, the trustee is bound by all authorized acts of the debtor in possession." *Nicholas v. United States*, 384 U.S. 678, 693 n.27 (1966). The purpose for such a rule, as correctly highlighted by Zurich, is that "[c]reditors must be able to deal freely with debtors-in-possession, within the confines of the bankruptcy laws, without fear of retribution or reversal at the hands of a later appointed trustee." *Armstrong v. Norwest Bank*, 964 F.2d 797, 801 (8th Cir. 1992). Zurich's argument misses the mark, however, because it implies that a

---

[11]Zurich relies heavily on *Jonas v. U.S. Small Bus. Admin. (In re Southland Supply, Inc.)*, 657 F.2d 1076 (9th Cir. 1981), and *In re Teligent, Inc.*, 306 B.R. 752 (Bankr. S.D.N.Y. 2004). Both cases are distinguishable. In *Southland Supply*, we found that a trustee could not object to a lien on certain lawsuit proceeds granted earlier by the debtor-in-possession. 657 F.2d at 1080. Importantly, we also found that the debtor-in-possession in *Southland Supply* had the authority to grant such a lien pursuant to state law. *Id.* In this case, the debtor-in-possession did not have the authority to assume a non-executory contract. *Teligent* involved an employee medical insurance policy that was assumed by the debtor-in-possession, and the court in *Teligent* relied on equitable estoppel to hold that a trustee was barred from arguing that the bankruptcy court erred in entering the assumption order. 306 B.R. at 759-60. But the trustee in *Teligent* did not argue that the contract was non-executory and therefore erroneously assumed.

trustee is bound by the earlier actions of a debtor-in-possession even if those actions are inconsistent with the Bankruptcy Code. But a trustee may challenge a debtor-in-possession's actions in extraordinary circumstances, such as where a debtor-in-possession acted outside the confines of the bankruptcy laws. *See Superior toy*, 78 F.3d at 1175. Where, as here, the bankruptcy court unknowingly approved an assumption order that unlawfully assumed a non-executory contract, the trustee may seek relief pursuant to Rule 60(b). *See id.*

Zurich also asserts that the bankruptcy court could not alter, amend, or reinterpret the assumption order once Zurich had detrimentally relied. In *Lenox*, we held that, in the absence of "vested" rights, bankruptcy courts have broad discretion under Rule 60(b) to revisit past orders. *Lenox*, 902 F.3d at 739-40. In this case, there was no detrimental reliance because, absent the extension, Zurich was still required to pay claims even if IFCI stopped performing. Zurich's suggestion that it extended the policy only because the assumption order secured IFCI's pre-petition claims is misplaced; the extension had no impact on Zurich's prior rights or obligations under the policy. What the assumption order, as interpreted by the bankruptcy court, did do was provide security for claims that arose *after* the extension. Zurich was under no obligation to extend the policy and it was entitled to seek guarantees for doing so. But Zurich was not entitled to cut in line in front of other unsecured creditors. While the bankruptcy court's clarification prevented Zurich from doing this, it did not interfere with any vested rights.

**[8]** Because the assumption order granted relief not permitted by the Bankruptcy Code and IFCI's assumption motion violated the bankruptcy court's notice and conspicuousness requirements, there were sufficient grounds for clarifying the assumption order pursuant to the catch-all provision of Rule 60(b)(6).[12] Aside from Rule 60(b)(6), the bankruptcy court

---

[12]In affirming the bankruptcy court, the district court also found that the procedural failures amounted to a violation of the creditors' due process

also had the discretionary power to reconsider its order. *See* 11 U.S.C. § 105(a); *see also Lenox*, 902 F.2d at 739-40. Therefore, the bankruptcy court did not abuse its discretion.

V.

Zurich further objects to the bankruptcy court's clarification of the assumption order by arguing that the two-year gap between the original order and the Trustee's motion violated the timeliness requirement of Rule 60(b). Rule 60(b) requires that reconsideration under the catch-all provision be requested "within a reasonable time." Fed. R. Civ. P. 60(b). What qualifies as a reasonable time " 'depends on the facts of each case.' " *United States v. Wyle (In re Pac. Far East Lines, Inc.)*, 889 F.2d 242, 249 (9th Cir. 1989) (quoting *United States v. Holtzman*, 762 F.2d 720, 725 (9th Cir. 1985)). The relevant facts may include the length and circumstances of the delay and the possibility of prejudice to the opposing party. *Id.*; *Holtzman*, 762 F.2d at 725. Thus, relief under Rule 60(b) should only be granted where the moving party is able to demonstrate "that circumstances beyond its control prevented timely action to protect its interests." *Alpine Land & Reservoir*, 984 F.2d at 1049.

**[9]** In this case, the Trustee's two-year delay in seeking clarification of the assumption order is justified by extraordinary circumstances. In fact, the delay resulted from Zurich's own conduct. Zurich's massive pre-petition claims were not disclosed in the assumption motion or the assumption order, and in fact did not become known to the bankruptcy court, Trustee, or most of the creditors until after Zurich filed its

---

rights. For that reason, the district court held that clarification of the assumption order was necessary pursuant to Rule 60(b)(4). Because we find that Rule 60(b)(6) provided a sufficient and proper basis for clarifying the assumption order, we decline to comment on the district court's due process analysis.

motion for summary judgment. In fact, Zurich did not even reveal the extent of its pre-petition claims in its summary judgment motion. Rather, the Trustee learned on its own that almost all of Zurich's claims against IFCI's post-petition assets arose from pre-petition injuries. Having discovered this previously undisclosed information, the Trustee then timely sought reconsideration of the assumption order. Therefore, even a two-year delay should not preclude the bankruptcy court's reconsideration of the assumption order under Rule 60(b)(6). *See, e.g., Holtzman*, 762 F.2d at 725 (holding that a five-year delay was not unreasonable); *Washington v. Penwell*, 700 F.2d 570, 572-73 (9th Cir. 1983) (holding that a four-year delay was not unreasonable); *Clarke v. Burkle*, 570 F.2d 824, 831-32 (9th Cir. 1978) (holding that a six-year delay was not unreasonable).

Furthermore, the bankruptcy court properly found that Zurich was not prejudiced by the delay. Zurich claims it was prejudiced because it relied on the assumption order in extending the workers' compensation insurance policy and assuming liabilities it otherwise would not have. The bankruptcy court correctly pointed out, however, that Zurich received a premium of almost $300,000 for a two-month extension of the policy, and that the assumption order, as clarified, secured all of Zurich's post-petition reimbursement claims. According to the bankruptcy court, "Zurich profited from the extension and undertook virtually no risk." *Int'l FiberCom*, 311 B.R. at 867. Indeed, Zurich was placed "in a far better position than it would have been in had the Order never been entered." *Id.* at 868. The bankruptcy court's factual findings are not clearly erroneous. With respect to Zurich's pre-petition reimbursement claims, Zurich fails to demonstrate any detrimental reliance for the reasons already explained. As a result, Zurich was not prejudiced by the two-year delay in this case, so the timeliness requirement of Rule 60(b) is satisfied.

## VI.

Zurich also appeals the bankruptcy court's denial of its motion for a full evidentiary hearing. In support of its Rule 59(a) motion to alter or amend the order, Zurich proffered additional documentary evidence, which it supplemented with oral argument at a preliminary hearing. Under Rule 59(a), made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 9023, a court has the discretion to reopen a judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law, or make new findings and conclusions. *See* Fed R. Civ. P. 59(a); *Defenders of Wildlife*, 204 F.3d at 928-29. Zurich sought to introduce evidence to rebut what it considered "unsupported conclusions" upon which it felt the bankruptcy court based its reconsideration of the assumption order. In particular, Zurich wanted to introduce evidence demonstrating that the Creditors Committee and the U.S. Trustee were aware of IFCI's outstanding pre-petition obligations to Zurich, that counsel for the Creditors Committee had sufficient time to review IFCI's assumption motion, that Zurich played no role in the procedural deficiencies in IFCI's assumption motion, that Zurich undertook risk in extending the policy, and that Zurich had not "slept on its rights" regarding IFCI's failure to establish the additional collateral account.

[10] The bankruptcy court did not abuse its discretion in denying Zurich's request for a full evidentiary hearing. There was adequate factual basis for the bankruptcy court's decision. IFCI's assumption motion facially failed to comply with General Order 82. In this regard, the motion speaks for itself. No further evidence is required. Furthermore, whether the workers' compensation insurance policy is an executory contract is a legal issue that can be determined based on the facts already in the record. Additional evidentiary support is unnecessary. Therefore, the evidence Zurich sought to admit would have been irrelevant or superfluous. Moreover, Zurich actually did submit evidence relevant to the bankruptcy court's

decision. For example, Zurich submitted its own statement of facts in support of its summary judgment motion, along with exhibits. Also, when Zurich filed its motion to alter or amend, it submitted substantial additional factual support pertinent to the bankruptcy court's findings. Zurich fails to explain what more it would have offered during a hearing that it had not already submitted to the bankruptcy court. Thus, the bankruptcy court properly exercised its discretion in denying Zurich's request for a full evidentiary hearing.

## VII.

We conclude that the bankruptcy court did not abuse its discretion in reconsidering and clarifying its prior order. The assumption order granted relief not permitted by the Bankruptcy Code, and the motion on which the order was based violated the bankruptcy court's notice and conspicuousness requirements. Reconsideration was therefore proper under Federal Rule of Civil Procedure 60(b)(6). A full evidentiary hearing was unnecessary because the bankruptcy court had ample factual basis for its conclusions.

**AFFIRMED.**